NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2004
_____

BRIAN DILLOW,
Appellant

v.

TREASURER OF THE COMMONWEALTH OF PENNSYLVANIA
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:22-cv-01852)
District Judge: Honorable R. Barclay Surrick
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
October 1, 2025
_____

Before: SHWARTZ, MATEY, and FISHER, Circuit Judges.

(Filed: October 3, 2025)
_____

OPINION*
_____

SHWARTZ, Circuit Judge.

_____

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Brian Dillow appeals the District Court's order dismissing his complaint alleging that Pennsylvania's Disposition of Abandoned and Unclaimed Property Act ("DAUPA") violates the Takings Clause and Pennsylvania's constitutional analogue. Because Dillow's claims are not ripe, we will affirm the District Court's order dismissing the complaint but will modify the order so the dismissal is without prejudice.

I

A

DAUPA is Pennsylvania's "escheat" law, a law that governs states' disposition of unclaimed property. See, e.g., Am. Exp. Travel Related Servs., Inc. v. Sidamon-Eristoff, 669 F.3d 359, 365 (3d Cir. 2012); 72 Pa. Stat. and Cons. Stat §§ 1301.1-1301.29. Under DAUPA, once property is deemed "abandoned and unclaimed"—which occurs in specific, statutorily-defined circumstances, §§ 1301.1-1301.11—the holder of the property must attempt to notify the owner so that he may claim it, § 1301.10a. If the owner of the property does not claim it, the holder then must deliver that property to the State Treasurer for safekeeping. See §§ 1301.2, 1301.13. Upon delivery, the Commonwealth holds the property in "perpetual temporary custody," Smolow v. Hafer, 959 A.2d 298, 304 (Pa. 2008), but "does not acquire title to [the] property, . . . and the owner can reclaim it at any time," In re Escheatment of Matured, Unredeemed, & Unclaimed U.S. Sav. Bonds, 189 A.3d 520, 533 n.11 (Pa. Commw. Ct. 2018).

Until the owner claims the property, however, the Commonwealth may use it for the common benefit of its citizens, including selling the property to convert it to cash to

2

be deposited in the Commonwealth's General Fund or donating it to the Commonwealth or one of its subdivisions if "the costs associated with delivery, notice or sale exceed the value of the property." §§ 1301.17-1301.18. If an owner claims property after it has been sold, "[t]he State Treasurer shall be responsible to [its] owner only for the amount actually received . . . upon [its] sale." § 1301.17(d).

## B[1]

Dillow is a citizen and resident of Chester County, Pennsylvania, who is an "owner" of "property," namely, a "Claims Payment Check" and a "Bank Draft," currently held by the State Treasurer under DAUPA. App. 25, 29-30. The Treasurer converted the property into cash and has used it for public purposes, such as investing and earning interest, or funding the Commonwealth's operations and programs. Dillow has not attempted to claim his property, but asserts that if he were to try, the Treasurer would pay him cash equal to the total sum of the amounts stated on the Claims Payment Check and Bank Draft, but not "any just compensation . . . for the Commonwealth's use of that property during the period of custody"—specifically, "interest, dividends, accruals, earnings, investment returns, and other benefits earned on and from [that] unclaimed property." App. 30, 35.

## C

---

[1] Because we are reviewing an order dismissing the complaint under Fed. R. Civ. P. 12(b)(6), we "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." E.g., Doe v. Princeton Univ., 30 F.4th 335, 340 (3d Cir. 2022).

Dillow filed a putative class action[2] complaint under 42 U.S.C. § 1983 against Pennsylvania State Treasurer Stacy Garity in her official capacity, seeking an order (1) declaring that DAUPA violates the Takings Clause,[3] and Article I, Section 10 of the Pennsylvania Constitution,[4] and (2) enjoining the Treasurer from "withholding interest, dividends, accruals, earnings, investment returns, and other benefits earned on and from unclaimed property when paying just compensation to the owners of the property," among other things. App. 34-35. The District Court granted the Treasurer's dismissal motion under Federal Rule of Civil Procedure 12(b)(6), concluding that the Commonwealth's use of Dillow's property while in the Commonwealth's custody did not constitute a compensable constitutional taking because Dillow had abandoned the property, and regardless, the Commonwealth need not pay Dillow interest to "compensate [him] for the consequences of his own neglect." Dillow v. Garity, No. 22-1852, 2024 WL 1975458, at *3-5 (E.D. Pa. May 3, 2024) (quoting Texaco, Inc. v. Short, 454 U.S. 516, 530 (1982)).

---

[2] Dillow sought to represent a class defined as "[a]ll persons or entities (including their heirs, assignees, legal representatives, guardians, administrators, and successors in interest) who are owners of unclaimed property being held in custody by the Treasurer of the Commonwealth of Pennsylvania in the form of money under [DAUPA]." App. 30.

[3] The Fifth Amendment's Takings Clause provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. The Fourteenth Amendment incorporates that right against the States. Chi., B. & Q.R. Co. v. City of Chicago, 166 U.S. 226, 241 (1897).

[4] The Pennsylvania Constitution provides that "private property [shall not] be taken or applied to public use, without authority of law and without just compensation being first made or secured." Pa. Const. art. I, § 10. Pennsylvania courts generally interpret this constitutional provision consistent with federal takings jurisprudence. E.g., Smolow, 959 A.2d at 300 n.6.

Dillow appeals.

## II[5]

The District Court exercised its statutory jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1367 over Dillow's claims without first confirming that it had Article III jurisdiction, see Dillow, 2024 WL 1975458, at *2 n.1.  We address that question now.[6]

Article III limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2.  One element of this case-or-controversy requirement is that plaintiffs must establish that their claims are ripe.  See, e.g., Free Speech Coal., Inc. v. Att'y Gen., 825 F.3d 149, 167 n.15 (3d Cir. 2016).  For a case to be ripe, it must not "depend[ ] on contingent future events that may not occur as anticipated, or indeed may not occur at all."  Trump v. New York, 592 U.S. 125, 131 (2020) (internal quotation marks omitted) (quoting Texas v. United States, 523 U.S. 296, 300 (1998)).

Here, Dillow alleges his expectation that "should [he] claim his property, [the Treasurer] . . . will not pay any just compensation to [him] for the Commonwealth's use of that property during the period of custody."  App. 30.  He does not allege that he has filed a claim with the Treasurer and was denied the property or the interest on the value of his property being held.  Thus, any harm to Dillow is subject to multiple contingencies, including submitting a claim for the property from the Treasurer, which remains abandoned.  See id.; 72 Pa. Stat. and Cons. Stat § 1301.3(3) (presuming abandoned

---

[5] We have appellate jurisdiction under 28 U.S.C. § 1291.

[6] We have jurisdiction to review both our jurisdiction and that of the district court. Pub. Int. Legal Found. v. Sec'y, Commw. of Pa., 136 F.4th 456, 461 (3d Cir. 2025).

5

written financial instruments that have been outstanding more than three years); Tyler v. Hennepin County, 598 U.S. 631, 646-47 (2023) (permitting presuming property abandoned when the owner fails to make any use of it for an undefined "lengthy period of time").

Requiring Dillow to make such a claim is not tantamount to mandating a type of pre-suit exhaustion.  In cases requiring exhaustion, a plaintiff has suffered an injury but must exhaust other remedies to address the injury.  Here, Dillow is not injured until he deprived of something to which he claims entitlement.  See Pakdel v. City & County of San Francisco, 594 U.S. 474, 479 (2021) (noting in the takings context that plaintiffs still must have been actually injured by the Government's action and are not prematurely suing over a hypothetical harm).

Unless and until the contingencies noted above occur, Dillow's claim is not ripe and the federal court lacks jurisdiction to consider the merits of his claims.

III

For the foregoing reasons, we will affirm the District Court's order dismissing Dillow's complaint with a modification that the dismissal be without prejudice.[7]

---

[7] See, e.g, Cottrell v. Alcon Labs., 874 F.3d 154, 164 n.7 (3d Cir. 2017) (noting it is generally improper to dismiss with prejudice for lack of Article III standing).

6